UNITED STATES v. TWENTY–EIGHT CASKS, ETC. See Case No. 14,281.

## Case No. 16,560.

### UNITED STATES v. TWENTY–EIGHT CASKS OF WINE.

[See Case No. 14,281.]

## Case No. 16,561.

### UNITED STATES v. TWENTY–EIGHT PACKAGES OF PINS.

[Gilp. 306.] [1]

District Court, E. D. Pennsylvania. June 2, 1832, and Jan. 10, 1833.

PRACTICE— PRODUCTION OF BOOKS AND PAPERS — PROCEEDINGS IN REM — CUSTOMS DUTIES — UNDERVALUATION—INFORMATION OF FORFEITURE.

1. The affidavit of a party interested, taken without cross examination, is competent evidence on a motion for an order on the opposite party, to produce books and writings, under the provisions of the act of September 24, 1789 [1 Stat. 73].

2. A court of chancery, on a bill of discovery, will not compel a party to produce evidence which would subject him to a forfeiture.

3. A proceeding in rem is not within the provisions of the act of September 24, 1789, which authorise an order to produce books and writings, on the trial of actions at law.

[Cited in U. S. v. Distillery No. 28, Case No. 14,966.]

4. Where an information has been filed under the provisions of the act of May 28, 1830 [4 Stat. 409], against articles alleged to be falsely charged in an invoice, the court will not grant an order on the claimant to produce the invoice on the trial of the cause.

5. To subject goods to forfeiture for a false valuation in an invoice, it must have been produced at the custom house for the purposes of an entry.

6. To make up a false invoice at the place of exportation. with intent to defraud the revenue, is not an offence against the law, until followed up by an actual attempt to use it for the purposes of an entry.

7. The sole object of the laws of impost is the collection of the duties; they are not intended for the punishment of crimes.

On the 17th December, 1831, an information was filed by the attorney of the United States, against twenty-eight packages of pins imported in the ship Monongahela, from Liverpool, which were alleged to be forfeited, on the ground, that "the invoice thereof was made up with intent to evade and defraud the revenue," contrary to the provisions of the act of congress of May 28, 1830, relative to goods subject to ad valorem duty. Pamph. Laws 1830, p. 105. On the 17th January, 1832, William C. Cardwell and John Potter, for and on behalf of Kirby, Beard and Kirby, of London, filed a claim to the goods in question. They also denied the allegation that any invoice thereof was made up with intent to defraud the United States; and submitted,

1 [Reported by Henry D. Gilpin, Esq.]

that as no entry of the goods had been made, they were not liable to forfeiture even if that allegation were true. To this claim and answer a general replication was filed on behalf of the United States. On the 28th May, 1832, the attorney of the United States applied to the court for "an order on the claimants and their agents, to produce, at the trial of the above cause, the original invoice of the goods, wares, and merchandise, mentioned in the information; and, on the non-production thereof, that judgment be rendered in favour of the United States of America." At the same time an affidavit of James N. Barker, collector of the port of Philadelphia, was filed, to the following effect: "That the original invoice in question was, as the deponent believed, in the possession or power of Messrs. Cardwell and Potter, the agents of the claimants; that Mr. John Potter, one of that firm, declared to the deponent, in the month of December, 1831, that he had received it and exhibited it to his counsel, and that it was then in his possession or power; that Messrs. Cardwell and Potter had been requested to produce it at the custom house, which they refused to do; and that it contained evidence pertinent to the issue joined in the case." 1 Story's Laws, 59 [1 Stat. 82]; Geyger v. Geyger [Case No. 5,375].

Mr. Scott, for claimants.

This proceeding is novel in its character; such an order as that now asked for has never been made in a penal case; the object is to obtain from the claimants, evidence necessary to sustain the condemnation of their own property. The application is founded on the fifteenth section of the act of September 24, 1789; but that refers only to actions at law; it extends only to books and writings in which the parties are interested; it looks to a person as the defendant; it extends only to cases within the similar rule of chancery proceedings; and it must be preceded by adequate notice. The present case is defective in all these respects: (1) This is not an action at law, for that term is confined to proceedings according to the forms of the common law, where there is a party to act and to be acted on; it does not embrace suits of equity, admiralty, or maritime jurisdiction. (2) An invoice is not such a written instrument as is meant by "books and writings;" a bill of discovery only lies for papers to which both of the parties have a primâ facie right, or which relate to a title of lands in dispute. (3) The act of congress expressly authorises a judgment against a person, the plaintiff or defendant, if the order is disobeyed; here there is no plaintiff or defendant, it is an information filed by a public officer against a thing; there can be no judgment, it must be a decree as to the property. (4) The ordinary rules of proceeding in chancery would not compel the production of such a paper; they never oblige a man to betray himself, or to disclose what will subject him to a penalty.